## Losh, Executor, et al. v. Brunk.

*Error proceedings—Judgment not reversed on weight of evidence, when—Contest of will—Testimony of divorced wife not privileged—Section 11494, General Code—Failure to object thereto or establish third persons not present.*

1. The judgment of a trial court will not be disturbed by a reviewing court as being against the weight of the evidence unless the record shows clearly and satisfactorily that it is manifestly so.

2. The admission of testimony of a divorced wife cannot be made the basis of an error on the ground that the matters testified to were privileged communications under the statute (Section 11494, General Code), where the record fails to disclose that the communications were not made or the acts not done in the known presence of a third person competent to testify, and counsel for the complaining party at the trial made no objections on the ground that the communications and acts attempted to be proved were privileged.

(Decided January 28, 1924.)

Error: Court of Appeals for Clinton county.

*Messrs. Hayes & Barns* and *Mr. J. T. Doan,* for plaintiffs in error.

*Messrs. Smith, Rogers & Smith,* for defendant in error.

Hamilton, J. The action below was to contest the validity of the will of Samuel J. Irvin, deceased.

The defendant in error, Velma Brunk, who was plaintiff below, was the daughter and only child of the said Samuel H. Irvin, deceased, and brought suit to set aside the will of her father. Both the

questions of mental capacity and undue influence were raised in the trial of the case. The issues were made up in accordance with the statute and were submitted to the jury. The jury returned a verdict finding the will not to be the valid last will and testament of Samuel J. Irvin. Judgment was entered on the verdict, and plaintiffs in error now prosecute error to this court seeking a reversal of that judgment.

Several grounds of error are urged, the main question being the weight of the evidence, which we will first consider.

Many witnesses were introduced and fully examined on behalf of the contestant, and on behalf of the contestees. That the case was fully tried is attested by the bill of exceptions, some seven hundred pages. It would be impossible in a memorandum opinion of reasonable length to go fully into a discussion of the evidence, in view of its volume and the character thereof, and it would serve no good purpose to record it in an opinion. We will, therefore, but touch upon some of the salient features of the evidence.

On behalf of the contestant, there was evidence introduced to the effect that the testator at the time of his marriage to the mother of contestant, in 1889, was of a morbid, depraved mentality; that at the time of the birth of his daughter, the contestant, he sought her death through the mother, but later became very much attached to her; that he was at all times of a sleepless, nervous, vicious disposition; that he made a practice of associating with lewd women, and boasted of the same to his wife; that in 1904 he became afflicted with the disease of syphilis, which increased his nervous and

vicious character; that he was cruel and gave way to violent fits of anger; that at this time his wife filed an action for a divorce, which, at the instance of members of the family, was later dismissed; that during the following years he committed many acts indicating an affected mentality and was subject to hallucinations, exhibitions of great fear, jealousy without cause, lapse of memory, fits of melancholy and a tendency toward suicide. This continued until May, 1918, when, at the instance of testator's father, a guardian was appointed for testator, the father at this time making the affidavit that testator was insane. The guardianship was continued until September, 1918, when the guardianship was set aside, and he was restored to his legal rights. The following April the will in question was executed by him.

The will left the daughter, the contestant herein, a legacy of $1,000. All the rest of his property was left to his father, mother, brothers, and sisters, and their heirs.

Immediately following the testator's restoration to his legal rights, his wife, the mother of the contestant, filed an action for divorce, and later secured an absolute divorce from him. At the time of the divorce there was a settlement of alimony out of court. About two years later he committed suicide by hanging.

There is evidence to the effect that the father of the testator exercised a great deal of influence over him, as did his mother; that in the spring of 1918 testator turned against his wife and the husband of his daughter, the daughter having married just prior to that time. There is evidence that the marriage of the daughter at the time it

occurred met with the complete approbation of her father; that after separation from his wife, in the spring of 1919, the testator went to live with his father and mother and resided with them until his death by suicide. There is evidence that at the time of the separation there was an insurance policy on the life of the testator in favor of the wife and daughter, which was afterwards changed to his mother as beneficiary; that in 1918 the testator went to Martinsville, Indiana, to the springs, seeking relief from his condition. There is evidence that the testator frequently refused to do things requested, for the reason that his father would not permit him. There is evidence that his father was antagonistic to the wife and daughter, and to the daughter's husband, and made a statement that they had come there without anything and he would see that they went away without anything.

There was expert evidence to the effect that under the conditions testified to testator could not have been of sound mind at the time of the execution of the will, and would be a person easily influenced.

The contestees called many witnesses, substantial people in the community, who testified to the effect that they had known testator for some years, and had had business transactions with him, and thought he was of sound mind. Counsel who prepared the will, and witnessed the same, testified likewise.

It is argued that the fact that the testator cut the daughter off with a comparatively small legacy is entirely consistent with a sane mind, for the reason that the daughter had testified in a trial of a case in court that her father was a thief.

This seems to be the outstanding proposition urged by contestees. Giving this question due importance, we have examined the record bearing on the fact. It appears that the wife and the son-in-law of the testator had been arrested for the larceny of an oil can. The charge against the mother was dismissed, and the son-in-law was being tried for the offense. The daughter was a witness in that case and testified in favor of her husband to facts indicating her father to have been the offender. On cross-examination in the trial of the will-contest case now under consideration, she was asked by counsel for the contestees:

"Q. Did you ever from the witness stand, under oath, say that your father was a thief? A. No, sir. I never called him a thief. * * *

"Q. And wasn't this question asked you: 'What happened? A. He (meaning your father) got mad at Oris because he wouldn't steal the can.' Did you answer that way? A. I don't remember. * * *

"Q. Was he a thief? Do you say he was a thief? A. No, I don't say he was a thief.

"Q. You were asked if he wasn't a thief, wasn't you? A. Judge West put that question in my mouth and I couldn't get around it."

There is nothing to show that when she was testifying in behalf of her husband, she was not telling the truth. If her testimony was truthful, and it left an inference against her father, and he thereupon turned against her, this would but add to the proof of an abnormal mentality of the testator. Placed as she was, between loyalty to her husband, in whose innocence she believed, and natural affection and regard for her father, she was in such

position that we can attach no weight to the result of such a question.

This brief statement of the salient features of the evidence shows clearly that the result of the case resolved itself largely into a question of the credibility of the witnesses.

If the jury believed all of the evidence submitted by contestant, it would be fully justified in returning the verdict that it did. On the other hand, if it believed the evidence of the contestees, that at the time of making the will testator was of sound mind, its verdict must necessarily have been to the contrary.

The rule is that unless the record shows clearly and satisfactorily that the judgment is manifestly against the weight of the evidence, the judgment will not be disturbed. In this connection, the credibility of the witnesses cannot be considered. Where the evidence is merely conflicting, the question is one for the jury, and its judgment will not be disturbed. *Krell* v. *Krell Piano Co.*, 14 Ohio App., 74, 79. Applying the rule, we cannot say that the verdict and judgment were manifestly against the weight of the evidence, and this question of error must be resolved against the plaintiffs in error.

It is suggested in the brief of plaintiffs in error that the testimony of the divorced wife of the testator, who was one of the main witnesses for the contestant, was improperly admitted, for the reason that the matters testified to by her were privileged communications under the statute (Section 11494, General Code) which provides that a husband or wife shall not testify "concerning any communication made by one to the other, or act done

by either in the presence of the other, during cover-ture, unless the communication was made, or act done, in the known presence or hearing of a third person competent to be a witness. The rule shall be the same if the marital relation has ceased to exist."

No doubt a great deal of evidence given by the mother of the contestant could have been ex-cluded on this ground, but the record fails to dis-close any objection whatever to the competency of the mother as a witness. The record discloses some few minor objections on the ground of hear-say, or on the ground that the question was lead-ing, and objections to statements by the witness as to what she did in the absence of the testator, all of which are without substance and could in no way affect the result of the trial or raise the ques-tion of privileged communication.

There is nothing in the record to show that the communications were not made or the acts not done in the known presence of a third person com-petent to be a witness.

It is apparent from the record that many of the things said and done to which the mother testified were in the known presence of third persons, com-petent to be witnesses. It was the duty of coun-sel under these circumstances to make their objec-tions on the ground that the communications and acts attempted to be proved were privileged. The court would then have required the plaintiff to bring the witness within the requirement of the statute. *Westerman* v. *Westerman,* 25 Ohio St., 500; *Geauga Iron Co.* v. *Street,* 19 Ohio, 300; *Pat-terson* v. *State,* 96 Ohio St., 90.

We find no error in the admission or exclusion of evidence.

Some complaint is made against the charge of the court in that the court in enumerating to the jury the claims of the contestant used the language, "an unwarranted aversion and dislike on the part of the deceased for plaintiff, his daughter, and her husband." The claim is that this statement is unwarranted from the evidence; that the evidence with reference to the daughter showed the contrary. The following acts of the testator concerning the daughter are in the evidence: That after October, 1918, he never spoke to her, nor she to him; that he never went to see her in her new home after her baby was born; and that she did not go to see him or receive any communications from him; and that, as testified to by Judge Clevenger, he complained against her.

These, and other things not enumerated, fully justify the statement. There was no error in this language of the charge.

Some other technical questions are suggested in the brief, but they are without substance.

We find no prejudicial error in the record and the judgment will be affirmed.

*Judgment affirmed.*

CUSHING and BUCHWALTER, JJ., concur.